Concurrence by Judge WILLIAM A. FLETCHER.
OPINION
IKUTA, Circuit Judge:
Charles Lee Reynolds appeals from the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2241, contending that the Federal Bureau of Prisons (“BOP”) erred by refusing to issue an order under 18 U.S.C. § 3621(b) that retroactively (nunc pro tunc) designated the Montana state prison where Reynolds served his state sentence as the place *1146 where he began serving his federal sentence. Such an order, in effect, would have deemed that Reynolds’s federal sentence ran concurrently with his state sentence, and thus would have shortened Reynolds’s term of federal imprisonment by the amount of time he served in state prison. We affirm the district court’s denial of the petition.
I
On October 3, 2002, Reynolds attempted unsuccessfully to cash a forged cashier’s check at a bank in Ennis, Montana. Notified by the bank, state police arrived, and Reynolds fled in his car. Following a high-speed chase, the police captured Reynolds and booked him in the Madison County, Montana, jail in the early hours of October 4. His booking sheet indicated that his arrest was “pursuant to a warrant.” Five hours after booking, Reynolds’s arresting officer received a copy of a federal warrant issued for Reynolds, which listed offenses relating to identity theft and interstate flight to avoid prosecution. On October 29, the county attorney for Madison County charged Reynolds by Information with forgery, identity theft, and violation of the terms of three suspended sentences. The county attorney for Lewis and Clark County, Montana, filed additional charges against Reynolds shortly thereafter.
Before Reynolds was tried or convicted in state court, the federal district court in Montana issued a writ of habeas corpus ad prosequendum, which released Reynolds to federal custody to answer federal criminal charges. On May 22, 2003, Reynolds pleaded guilty to identity theft, 18 U.S.C. § 1028(a)(7), and bank fraud, 18 U.S.C. § 1344. The district court judge, Judge Charles Lovell, sentenced Reynolds to 71 months’ imprisonment for each count, with the sentences to be served concurrently. That same day, Reynolds was returned to state custody.
Reynolds pleaded guilty to charges in Lewis and Clark County on July 24, 2003. The state court sentenced Reynolds to a term of fifteen years in state prison, with five years suspended. The state judge ordered Reynolds’s sentence for certain charges to run concurrently “with the federal sentence imposed on defendant.” Four months later, the state court in Madison County sentenced Reynolds to an additional five years in state prison, and likewise specified that this sentence should “be served concurrently with Defendant’s sentences in Lewis and Clark County, Montana, and U.S. District Court to the extent which they overlap.” Reynolds served 51 months in state prison.
While in state prison, Reynolds petitioned the BOP to designate nunc pro tunc the Montana state prison as the “place in which he may serve his federal sentence” pursuant to 18 U.S.C. § 3621(b).[1] Reynolds sought a declaration *1147 that his federal sentence began when he was first incarcerated in state prison. In support of his request, Reynolds noted that the Montana courts had ordered that Reynolds’s state sentence was to run concurrently with his federal sentence. The BOP determined, however, that the federal court had not ordered that his sentences run concurrently, and confirmed this interpretation with Judge Lovell. The BOP denied Reynolds’s request in December 2004.
On December 22, 2006, Reynolds was released from state prison and transferred to federal custody. He thereafter renewed his request for retroactive designation of the state prison as the place where he began serving his federal sentence. In response, the BOP again asked Judge Lovell to indicate “the Court’s position on a retroactive designation” in Reynolds’s case. In its letter, the BOP explained that if Reynolds’s request were granted, he would have a projected release date of July 17, 2008; otherwise, his projected release date would be February 17, 2012. In a letter dated October 2007, Judge Lovell stated that he had “no comment on[the BOP’s] consideration of Defendant Reynolds for retroactive designation of the state institution for the service of the federal sentence.”
The BOP denied Reynolds’s request in November 2007 based on the factors listed in 18 U.S.C. § 3621(b), specifically the nature and circumstances of Reynolds’s offense, Reynolds’s history and characteristics, and Judge Lovell’s response. Reynolds appealed this administrative determination. The BOP denied the appeal, stating that “[t]he federal judgment was silent regarding the execution of your service. As such, multiple terms of imprisonment imposed at different times are deemed consecutive unless the court dictates otherwise.” Furthermore, the BOP explained, Reynolds did not merit nunc pro tunc designation of the state prison under the factors enumerated in 18 U.S.C. § 3621(b). Reynolds’s actions (as noted by the federal sentencing court) posed a “significant danger to the community,” Reynolds’s flight from state authorities created a “substantial risk of death or serious bodily injury to others,” and he had attempted to influence a witness. Furthermore, the BOP noted that in light of “the career nature of [his] criminal activities, lengthy criminal history to include violence, and the characteristics of the instant offense, the likelihood of [his] recidivism is highly probable.”
Reynolds filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. The district court denied the petition, and Reynolds timely appealed. In November 2009, while this appeal was pending, Reynolds renewed his request for a nunc pro tunc designation of the Montana state prison where he had been incarcerated as the place where he began service of his federal sentence. The BOP contacted Judge Lovell for a third time; this time, the judge responded that “since the objectives of sentencing have apparently been largely met in his case, I have no objections to your suggestion for a retroactive designation.” On November 18, 2009, the BOP granted Reynolds’s request. Based on this ruling, the BOP determined that Reynolds was entitled to immediate release. His five-year term of supervised release thus began on November 20, 2009.
*1148 II
Before addressing the merits of Reynolds’s petition, we must address the government’s argument that Reynolds’s challenge to the BOP’s November 2007 decision is moot because it was superseded by the BOP’s November 2009 decision.
We conclude that Reynolds’s petition is not moot. A challenge to a term of imprisonment is not mooted by a petitioner’s release where the petitioner remains on supervised release and “[tjhere is a possibility that[petitioner] could receive a reduction in his term of supervised release under 18 U.S.C. § 3593(e)(2).” Mujahid v. Daniels, 413 F.3d 991, 995 (9th Cir.2005); accord Arrington v. Daniels, 516 F.3d 1106, 1112 n. 4 (9th Cir.2008); United States v. Verdin, 243 F.3d 1174, 1179 (9th Cir.2001). Reynolds is currently scheduled to remain on supervised release until 2014. In support of his petition challenging the BOP’s November 2007 decision, Reynolds claims he is entitled to a recalculation of his release date to July 17, 2008, and asserts that he was overincarcerated for sixteen months: from July 17, 2008 to his actual release date of November 20, 2009. A court could consider this alleged period of over-incarceration under 18 U.S.C. § 3583(e) as a factor weighing in favor of reducing the term of supervised release. See United States v. Johnson, 529 U.S. 53, 60, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000). Furthermore, because the BOP’s November 2009 decision did not recalculate Reynolds’s release date to July 17, 2008, it did not give Reynolds the relief he requested in his petition for habeas corpus. Accordingly, we reject the government’s contention that Reynolds’s appeal is moot.
Ill
We turn to the merits of Reynolds’s claim that the BOP erred in November 2007 when it denied his request for nunc pro tunc designation of the Montana prison as the facility for service of his federal sentences. We review de novo the denial of a petition filed under 28 U.S.C. § 2241, Bowen v. Hood, 202 F.3d 1211, 1218 (9th Cir.2000), reviewing underlying factual findings for clear error, McNeely v. Blanas, 336 F.3d 822, 826 (9th Cir.2003).
A
We begin with a brief overview of the law applicable to federal courts and the BOP’s determination of whether sentences should be served consecutively or concurrently. Under 18 U.S.C. § 3584, “[mjultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.”[2] A court has the discretion, however, to order that multiple terms of imprisonment run concurrently when the court is imposing multiple terms on a *1149 defendant at the same time or is sentencing a defendant already subject to an undischarged term of imprisonment. Id. The discretion granted by this provision is limited in two respects. First, “concurrent sentences imposed by state judges are nothing more than recommendations to federal officials.” Taylor v. Sawyer, 284 F.3d 1143, 1150 (9th Cir.2002). Accordingly, “the court” referenced in § 3584(a) refers only to federal courts. Second, we have held that even federal courts “cannot order a sentence to run either concurrently or consecutively to a non-existent term.” Id.; see 18 U.S.C. § 3584(a). In other words, a federal court cannot order a sentence to be served concurrently with a sentence, including a state sentence, that has not yet been imposed. Id.
During the sentencing process, federal courts must also consider the United States Sentencing Guidelines. See United States v. Carty, 520 F.3d 984, 991 (9th Cir.2008) (en banc). Section 5G1.3 of the Guidelines provides that under certain circumstances, if a defendant is already subject to an undischarged term of imprisonment for “relevant conduct,” the sentencing court should adjust a defendant’s sentence for the crime of conviction to take into account the time already served and should order the sentence to run concurrently with the remaining undischarged term of imprisonment.[3] This Guideline also includes the Sentencing Commission’s policy statement that where there is an undischarged term of imprisonment, the district court should exercise its discretion “to achieve a reasonable punishment” for the offense. § 5G1.3(c).
Once the district court has discharged its sentencing function, the defendant is committed to the custody of the BOP, which has the authority to calculate the defendant’s sentences in accordance with the district court’s orders, as well as to designate the facility for service of such sentences. By statute, a federal sentence “commences on the date the defendant is received in custody” at the “official detention facility at which the sentence is to be served.” 18 U.S.C. § 3585(a). The BOP has the authority to “designate the place of the prisoner’s imprisonment.” 18 U.S.C. § 3621(b). In exercising this designation authority, the BOP is directed to consider a range of factors, including “the nature and circumstances of the offense,” “the history and characteristics of the prisoner,” “any statement by the court that imposed the sentence” including any recommendation as to the type of correction facility, and “any pertinent policy statement” of the Sentencing Commission. Id.
*1150 On its face, § 3621(b) gives the BOP only the administrative responsibility to identify the facility in which a federal prisoner will serve out the sentence imposed by the district court. The BOP has interpreted this statute, however, as authorizing it to issue a nunc pro tunc order designating a state prison as the facility for service of a federal sentence “when it is consistent with the intent of the federal sentencing court or with the goals of the criminal justice system.” BOP Program Statement 5160.05 (January 16, 2003). Program Statement 5160.05 explains, “[wjhen a federal judge orders or recommends a federal sentence run concurrently with a state sentence already imposed the Bureau implements such order or recommendation, ordinarily by designating the state facility as the place to serve the federal sentence.” The BOP will also consider “an inmate’s request for pre-sentence credit toward a federal sentence for time spent in service of a state sentence as a request for a nunc pro tunc designation.” The Program Statement requires the BOP to consider the inmate’s request, and sets forth the procedure the BOP must follow in determining whether to designate a state prison for (in effect) concurrent service of a federal sentence. Such procedures require the BOP to ask the federal sentencing court if it has any objections to such designation.
We approved the BOP’s approach under this Program Statement in Taylor v. Sawyer, 284 F.3d at 1148-49.[4] In that case, we considered and rejected the argument that the Program Statement’s grant of authority to the BOP to issue a nunc pro tunc designation was inconsistent with § 3584 and thus invalid. Id. Instead, joining other circuits that had considered the issue, we concluded that “such a designation by the BOP is plainly and unmistakably within the BOP’s discretion.” Id. at 1149; see McCarthy v. Doe, 146 F.3d 118, 123 (2d Cir.1998) (holding that the BOP has the discretion to grant or deny a request for nunc pro tunc relief); Barden v. Keohane, 921 F.2d 476, 478 (3d Cir.1990) (same); see also Romandine v. United States, 206 F.3d 731, 738 (7th Cir.2000) (expressing agreement with “McCarthy’s bottom line” on this point). Finally, we rejected the defendant’s arguments that such a conclusion was contrary to the doctrine of dual sovereignty, principles of comity and federalism, and the Full Faith and Credit Clause. Taylor, 284 F.3d at 1151-53.
B
Reynolds raises two arguments on appeal. First, notwithstanding our decision in Taylor, he asserts that the BOP had an obligation to comply with the state court’s determination that Reynolds’s sentences should run concurrently with his federal sentence. Second, he asserts that the BOP’s denial of his request for nunc pro tunc designation of the Montana prison was arbitrary and capricious, primarily because the BOP based its denial on the historical accident that Reynolds was sentenced by the federal court before the state court. We address these arguments in turn.
1
Reynolds begins with a two-part argument as to why the BOP erred in ignoring the state court’s orders. Reynolds first points to § 3584(a), which states that multiple terms of imprisonment imposed at *1151 different times “run consecutively unless the court orders that the terms are to run concurrently.” Because the state court here ordered the state and federal terms to run concurrently, Reynolds argues, the BOP was bound by this ruling. The BOP’s decision to the contrary, Reynolds contends, was an improper assumption of judicial authority to determine the length of his sentences, rather than a proper exercise of discretion under § 3126(b). Thus, the BOP’s actions contravened Congressional intent and the principles of federalism and separation of powers.
Reynolds’s arguments fail because they are contrary to Taylor, in which we upheld the BOP’s authority to decline to make a nunc pro tunc designation of a state prison notwithstanding a state court’s contrary order. 284 F.3d at 1149. In Taylor, a defendant in state pre-trial custody appeared before a federal court on a unit ad prosequendum, and was sentenced to a term of imprisonment on a federal offense. Id. at 1146. Returned to state custody, the defendant was sentenced to a term of state imprisonment to run concurrently with the federal sentence. Id. The federal sentencing court denied the defendant’s request for an order giving him credit for time served in state prison, and also declined to recommend that the BOP issue a nunc pro tunc order designating the state prison as the place to serve his federal sentence. Id. Affirming the denial of the defendant’s petition for habeas corpus, we held that § 3584(a) did not impose any obligation on the BOP to implement a state’s concurrency order. Id. at 1149-50. Further, we held that the BOP had discretion under § 3621(b) and its Program Statement to decline to issue such an order, explaining that “we cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy.” Id. at 1149.
Reynolds attempts to distinguish Taylor on the ground that the federal sentencing court in that case expressly stated its intent that the federal sentence run consecutively to the state sentence. Reynolds argues that under such circumstances, the state court’s intent cannot bind a federal court, and the BOP was required to follow the federal court’s order that its sentence run consecutively. Because the federal court in his case did not make such an order, Reynolds asserts that the state court’s order bound the BOP.
We disagree. Notwithstanding factual differences, Taylor forecloses Reynolds’s argument. As in this case, the defendant in Taylor argued “that the BOP, in administering a federal sentence, should not be allowed to disregard a state court’s alleged order of concurrency,” and that the BOP’s action was invalid because it was “preempting what he claims are rights of the state court.” Id. at 1151. We rejected those arguments as having “no persuasive support in constitutional principle, consistent practice or established case law.” Id. Given our ruling in Taylor, we must conclude that the BOP had discretion to reject Reynolds’s request for a nunc pro tunc designation notwithstanding the state court’s order, and such a determination was not inconsistent with § 3584(a).
In light of this conclusion, we need not reach Reynolds’s argument that the BOP is powerless to designate a state prison nunc pro tunc on its own authority in light of contrary Congressional intent, separation of powers principles, and federalism concerns. Because the BOP did not order a nunc pro tunc designation of the state prison in this case, and it is that failure that Reynolds here challenges, any question about the scope of the BOP’s authority to do so is not properly before us. In any event, Taylor held that “such a designation by the BOP is plainly and unmistak *1152 ably within the BOP’s discretion.” Id. at 1149.
2
Although it is not entirely clear, Reynolds’s second argument appears to be that, but for the historical accident that Reynolds’s federal sentence was imposed first, his state and federal sentences would have run concurrently by force of law. Under these circumstances, Reynolds argues, the BOP’s denial of Reynolds’s requested nunc pro tunc designation was arbitrary, capricious, an abuse of discretion, and contrary to law. Reynolds provides three reasons why his sentences should have been imposed in a different order, and should now be deemed to run concurrently.
First, Reynolds claims that his original arrest in October 2002 was under a federal warrant, and the district court erred in holding otherwise. Therefore, Reynolds argues, he was in primary federal jurisdiction at the time the federal district court issued its sentence and he should have served the federal sentence first. If this had occurred, Reynolds would then have received credit for the entire federal sentence because the state court ordered the state sentence to be served concurrently.
We need not reach the question whether it would be an abuse of discretion to deny a nunc pro tunc designation under these circumstances, because here the district court did not clearly err in determining that Reynolds was under the primary jurisdiction of the state at the time of his federal conviction. “Normally, the sovereign which first arrests an individual acquires priority of jurisdiction for purposes of trial, sentencing, and incarceration.” United States v. Warren, 610 F.2d 680, 684-85 (9th Cir.1980). Although both state and federal arrest warrants were outstanding for Reynolds, his arresting officers did not receive a copy of the federal arrest warrant until 9:00 a.m. on October 4, five hours after Reynolds was booked into Madison County jail. Additionally, the federal district court brought Reynolds before it pursuant to a writ of habeas corpus ad prosequendum, a further indication that the state had primary jurisdiction over him. See, e.g., Thomas v. Brewer, 923 F.2d 1361, 1365 (9th Cir.1991); Gunton v. Squier, 185 F.2d 470, 470-71 (9th Cir.1950). Moreover, even were we to assume that a state’s prosecutorial delay might result in an abdication of primary jurisdiction, see Buggs v. Crabtree, 32 F.Supp.2d 1215, 1220 (D.Or.1998), no such delay occurred here. Reynolds was taken into federal custody less than sixty days after his arrest and was sentenced by state court approximately two months after being returned to federal custody.
Reynolds’s second argument is that the BOP acted arbitrarily and capriciously in failing to consider that the federal sentence would have run concurrently with the state sentence under § 5G1.3 if the state sentence had been imposed first. Reynolds explains that had the state sentence been pending when he appeared before the district court, § 5G1.3 would have led the federal sentencing court to impose a federal sentence that ran concurrently with the remaining undischarged term of state imprisonment. According to Reynolds, the BOP’s failure to take into account this direction constituted an abuse of discretion and violated the Sentencing Commission’s policy direction that, where there is an undischarged term of imprisonment, the district court should exercise its discretion “to achieve a reasonable punishment” for the offense. § 5G1.3(c).
This argument is unavailing, even assuming the state court’s sentence was for “relevant conduct” and otherwise met the criteria in § 5G1.3. The record establishes that the BOP carefully and thoroughly re *1153 viewed the factors set forth in its Program Statement before denying Reynolds’s request. There is no evidence that Reynolds asked the BOP to consider § 5G1.3 in connection with his request for nunc pro tunc designation. Even if Reynolds had brought § 5G1.3 to the BOP’s attention, that Guideline is inapplicable by its own terms, see supra; the BOP’s failure to follow an inapplicable Guideline is not an abuse of discretion.
Finally, Reynolds asserts that the BOP acted arbitrarily and capriciously because it incorrectly interpreted the federal court’s silence as intent that Reynolds’s state and federal sentences run consecutively. Had the BOP not made such an error, Reynolds argues, it would have issued a nunc pro tunc designation. However, we see no error on the BOP’s part. Section 3584(a) explicitly states that multiple terms of state and federal imprisonment run consecutively absent a court order that the sentences run concurrently. 18 U.S.C. § 3584(a). Here there was no federal court order indicating that Reynolds’s sentences should run concurrently. By denying Reynolds’s request, the BOP did no more than enforce the plain terms of § 3584(a). Accordingly, the BOP acted within its broad discretion under § 3621(b) and the Program Statement to grant or deny a request for nunc pro tunc relief after full and fair consideration.
AFFIRMED.

. Section 3621(b) states, in pertinent part:
(b) Place of Imprisonment. — The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the
Bureau determines to be appropriate and suitable, considering—
(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence—
*1147 (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
(B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

. Section 3584 provides, in relevant part:
(a) Imposition of concurrent or consecutive terms. — If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.
(b) Factors to be considered in imposing concurrent or consecutive terms. — The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

. Section 5G1.3(b)-(c) provides:
(b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § IB 1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:
(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of unprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.
(c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

. The BOP replaced Program Statement 5160.04 (April 19, 2000) referenced in Taylor, 284 F.3d at 1143, with the current Program Statement § 5160.05 in January 2003 in order to comply with a federal "plain language" initiative. The two program statements are identical in all material respects.